Filed March 18, 1892.

---

No. 15,443.

## KILLIAN v. ANDREWS ET AL.

DRAINAGE.—*Description of Land.—Notice.—Legislature May Determine.*—
It is competent for the Legislature to provide how lands may be described in a petition for a drain, and what notice must be given.

·SAME.—*Personal Liability of Land-Owner.*—The owner of land which is assessed with benefits in the construction of a ditch is not personally liable for such assessment.

SAME.—*Prior Mortgage Lien.*—The lien of a drainage assessment is subordinate to the lien of a pre-existing mortgage.

SAME.—*Estoppel.*—The holder of a mortgage, which is a prior lien to the drainage assessment, by silently standing by and permitting the drain to be constructed, is not estopped to assert that his lien is prior to the lien of the assessment.

From the Cass Circuit Court.

*D. D. Dykeman, W. T. Wilson* and *G. C. Taber,* for appellant.

*D. P. Baldwin,* for appellees.

MILLER, J.—The appellee Lucy Ann Andrews brought this action against the appellant to quiet her title to a tract of land.

The complaint was answered by a general denial, and also by a second paragraph, which does not require to be noticed.

The appellant also filed a cross-complaint, in which he asked for the foreclosure of a lien against the land acquired by him under certain drainage proceedings.

Issues were joined on the cross-complaint by a general denial and other defences, and the cause tried by the court, who, at the request of parties, made a special finding of the facts and conclusions of law.

So much of the special finding as we deem necessary to present the questions of law which must control the decision of this case is as follows :

That William H. Stanley, being the owner of the land described in the complaint, mortgaged the same to Wilhelmina Cochran on the 16th day of July, 1877, for $3,000; that said mortgage was duly recorded, and was afterwards, at the April term, 1884, of the Cass Circuit Court, foreclosed and the land sold July 5, 1884, by the sheriff, on the decree of foreclosure, to Quincy A. Myers ; that Myers received a certificate of purchase from the sheriff, and on the 15th day of the month had it recorded in the *lis pendens* record of Cass county.

That in September, 1884, Elizabeth Cost and Henry Cost filed their petition in the Cass Circuit Court, praying for the establishment of a ditch, setting out in their petition therefor that the lands described in the complaint would be benefited by the construction thereof; that afterwards such other proceedings were had in said circuit court, in and about the matter of such petition for drainage, as that, on the 22d day of December, 1884, the ditch was established by an order of the court, and the assessment of benefits before that time made by the ditch commissioners was affirmed, and the ditch was ordered to be constructed ; that at the time of the filing of the petition, and during the pendency of the proceedings, the lands described in the complaint appeared on the tax duplicate of the county, and on the transfer books, in the name of William Stanley, and the lands were described in the petition for drainage as belonging to him ; that neither the mortgagee nor Myers was mentioned in the petition, or the notices of the pendency thereof, or the notices of assess-

ment, as being the owner of or having any interest in the lands.

It is also made to appear from the findings that the lands described were assessed for the construction of the drain, and were afterwards sold by the county treasurer to the appellant for the amount of the assessment, penalty and interest; that in the year 1883, the lands were sold for taxes and a tax certificate issued to one McGovern, who, in 1885, received a tax deed; that on the 4th day of August, 1885, Myers obtained a sheriff's deed for the land, which was, in proper time, duly recorded. In December, 1885, Myers conveyed the land to one Jasper N. Booth, and in June, 1887, McGovern conveyed his interest in the land by a quitclaim deed to Booth. On the 26th day of August, 1887, Booth and wife and William H. Stanley and wife conveyed the land to the appellee; that at the time she purchased the land and took the deed she required and obtained from her grantors a bond and an agreement to indemnify her should the ditch assessment be a lien on the land, and she compelled to pay it.

The court concluded the law to be: " That the original assessment for the construction of the ditch is no lien upon the land and is a cloud upon the plaintiff's title."

This conclusion was excepted to, and presents the **principal** question in the case.

The petition for drainage mentioned in this case was evidently intended to conform to the provisions of the act of March 8, 1883, now section 1175 of Elliott's Supp., which provides that " Such petition shall be sufficient to give the courts jurisdiction over the lands described therein, and power to fix a lien thereon if they are described as belonging to the person who appears to be the owner according to the last tax duplicate or record of transfer kept by the auditor of the county where the same is situate."

It is not disputed but that the petition was drawn in strict conformity with the provisions above quoted, and the pro-

ceedings regular; and that if Stanley had continued to own the land it would have been bound by the assessment made for the construction of the ditch.    But it is earnestly contended that, the land having been sold at sheriff's sale to Myers some two months prior to the time of filing the petition for drainage, his title, when he obtained a sheriff's deed, related back to a time anterior to the commencement of the proceedings for drainage; and that neither he nor those claiming under him are affected by a suit or proceeding to which they were not parties, and of which they had no notice.

The act under consideration makes no provisions for making lien-holders parties to such proceedings or giving them notice, except the notice required upon the filing of the petition.    This is in harmony with the provision that it was only necessary to describe the lands as belonging to the one in whose name it appears on the tax duplicate, to enable the court to take jurisdiction and fasten a lien upon the land.

It was competent for the Legislature to provide how the lands should be described in the petition, and what notice should be given.

In speaking of a notice of this kind, this court, in the case of Carr v. State, etc., 103 Ind. 548, said : " It is competent for the Legislature to provide what kind of notice shall be given, and where the notice is of the character prescribed by statute, it is sufficient."

In Scott v. Brackett, 89 Ind. 413, it is said:    " It will be observed that this statute makes no provision for personal notice.    The only notice required is constructive.    With such notice, a lien may be fixed upon the land affected by the proposed work."    Garvin v. Daussman, 114 Ind. 429 ; Johnson v. Lewis, 115 Ind. 490.

It is not alleged in any of the pleadings, or found by the court, that Myers was ignorant of either the construction of the ditch or the making of the assessment, upon the Stanley land which he purchased.

The notice required by the statute having been given, the presumption is, in the absence of an averment to the contrary, that the notice conveyed to him knowledge.   This notice was certainly sufficient to sustain the proceedings from a collateral attack.  *McBride* v. *State, etc., ante,* p. 525 ; *Montgomery* v. *Wasem,* 116 Ind. 343 ; *Pickering* v. *State,* 106 Ind. 228 ; *McMullen* v. *State, ex rel.,* 105 Ind. 334 ; *Hackett* v. *State, etc.,* 113 Ind. 532 ; *Jackson* v. *Smith,* 120 Ind. 520 ; *Peters* v. *Griffee,* 108 Ind. 121.

In this case the proceedings were instituted, and the ditch was constructed, after Myers purchased the land at sheriff's sale.   The assessment was made upon the theory that the land he so purchased was benefited in an amount equal to the assessment made against it.   *Heick* v. *Voight,* 110 Ind. 279 ; *Ross* v. *Stackhouse,* 114 Ind. 200 ; *Garvin* v. *Daussman, supra ; Jackson* v. *Smith, supra.*   In the latter case this pertinent language was used :

" The assessment is made upon the theory that the benefit to the property is equivalent to the expense.   The owner, therefore, receives a thing of value, and he ought, in equity and good conscience, to pay for it."

The statute, under which the proceedings for drainage were instituted, provides that the assessment shall be a lien " from the time of filing the petition," which in this case was in September, 1884.

The mortgage, under which the appellee claims title, was executed in July, 1877.

The assessment made for improvements is strictly *in rem,* and gives no right of action against the land-owners, assessed as individuals.

In the opinion of the writer liens of this character do not stand upon the footing of ordinary encumbrances, but attach to the land benefited by the improvement, without regard to its individual ownership, and are not displaced by sales under pre-existing liens ; that such pre-existing liens may be *prior* liens, but that they are not superior ones.   In his

opinion, a lien created and enforced only because it confers a public, in addition to the private benefit, received by the land-owner, puts it upon the same basis occupied by a lien for taxes.

The majority of the court, however, regard this question as foreclosed by the cases of *State, ex rel.,* v. *Ætna Life Ins. Co.,* 117 Ind. 251, *Cook* v. *State, etc.,* 101 Ind. 446, *Chaney* v. *State, ex rel.,* 118 Ind. 494, *Deisner* v. *Simpson,* 72 Ind. 435, in which it was held that the lien of a drainage assessment is subordinate to the lien of a pre-existing mortgage.

The statute, as above stated, making no provisions for giving notice to encumbrancers, or making them parties to the ditch proceedings, we do not see how notice on the part of such encumbrancer of the construction of the ditch, or of the pendency of the action, can be of importance.

Standing silent and permitting the ditch to be constructed, or anything short of a promise to pay, or something calculated to deceive, can constitute an estoppel against one who holds a mortgage on lands being drained, for such conduct on the part of a mortgagee is entirely consistent with a reliance upon the priority of the mortgage lien.

There is another element discussed in this case that has only been referred to in the statement of facts : That Booth and wife and William H. Stanley and wife conveyed the property in controversy to the appellee, and that at the time of the execution of the deed they executed to her a bond and an agreement to indemnify her against this ditch assessment.

From this it appears that the appellee, at the time she instituted this suit to quiet her title against this lien for an assessment, which in equity and good conscience should be paid, held in her hands an indemnity, to save her harmless, in case she was compelled to pay such lien, executed by the land-owner, who owned the land, at the time the assessment became a lien, and who was a party to the proceedings.

We do not feel called upon to enter into a discussion of the circumstances under which a court of equity will seize

upon a fund, security or indemnity growing out of a sale of real estate, and make it the medium through which to work out the equities of the transaction, an example of which is found in the case of *McGuffey* v. *McClain, ante,* p. 327.

In order to entitle the appellant to the affirmative relief claimed, it should have been relied upon in his cross-complaint, and Stanley and wife, if not others, should have been joined as defendants to the cross-complaint. Neither of these things appears to have been done, and, therefore, any discussion of this question would be foreign to the case before us.

We find no error in the record.

Judgment affirmed.

Filed March 17, 1892.