No. 27,915.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON and THE STATE HIGHWAY COMMISSION, *Defendants*.

(292 Pac. 921.)

404

Opinion filed November 8, 1930.

.William A. Smith, attorney-general, for the plaintiff; S. T. Seaton, of Olathe, of counsel.

Roland Boynton, Ralph M. Hope, assistant attorneys-general, and Howard Payne, county attorney, for the defendants; Charles C. Hoge, of Olathe, of counsel.

T. M. Lillard, Bruce Hurd, O. B. Eidson, all of Topeka, Marc G. Boss, assistant county attorney of Cherokee county, Jesse A. Hall, county attorney of Leavenworth county, and Grant Waggoner, of Baxter Springs, as amici curiæ.

The opinion of the court was delivered by

JOCHEMS, J.: This is a hearing upon an order directed to the defendant board of county commissioners to show cause why they have not carried out the commands of a peremptory writ of mandamus.

On November 5, 1927, the original action in which this motion is filed was before the court. An opinion was then rendered which appears in State, ex rel., v. Johnson County Comm'rs, 124 Kan. 511, 260 Pac. 985. In that decision the court ordered that a peremptory

writ issue commanding the board of county commissioners to proceed forthwith with the construction of the highway, and retaining jurisdiction for the purpose of making the judgment effective in case further orders became necessary. The motion for the writ was supported by affidavit, and it appears from the motion and affidavit that following the granting of the writ by this court on November 5, 1927, the defendant board of county commissioners have done nothing whatsoever toward complying with the order of the court except to grade a distance of approximately eight miles of the highway in question. This was done prior to April 1, 1929, and nothing has been done toward the improvement of this highway since that time except to maintain the graded portion. It is further shown that on April 1, 1929, the state highway commission took over all state highways under the provisions of chapter 225 of the Laws of 1929. After the foregoing motion was filed upon motion of the relator the state highway commission was made a party defendant and an alternative writ of mandamus directed to it. The motion for the alternative writ to the state highway commission recites the organization of a benefit district under the provisions of the old law, chapter 213 of the Laws of 1925; the resolution of the county commissioners declaring the improvement to be a public utility; the granting of a peremptory writ of mandamus against the commissioners on November 5, 1927, as ordered in the case of *State, ex rel., v. Johnson County Comm'rs*, supra; that the state highway commission, so far as the construction of such through highway is concerned, is merely the successor of the county commissioners and that the order of mandamus is binding upon it as a privy and successor; that the highway commission is under statutory obligation to build this highway just as the commissioners were before the passage of chapter 225 of the Laws of 1929; and that both the county commissioners of Johnson county and the state highway commission have failed, neglected and refused to perform their duty or to coöperate, and have frustrated the purpose of the law and the order of this court.

Answer has been filed in behalf of the Johnson county commissioners and a separate answer in behalf of the state highway commission. The answer of the county commissioners, in substance, states that they have graded and constructed bridges on about eight miles of highway in controversy, but that since April 1, 1929, the construction of the highway has been under the jurisdiction of the

state highway commission and that the construction thereof is a matter discretionary with the highway commission; that the state highway commission has not let any contract nor made demand on the county commissioners for any funds or moneys to pay for the construction of the highway; further, that the county commissioners do not know what amounts of money will be required of them, nor the amount of bonds that they will be compelled to issue.

The state highway commission in its answer admits the issuance of the peremptory writ in *State, ex rel., v. Johnson County Comm'rs* directing them to proceed with the construction of the highway; that the county commissioners let a contract for grading a part of the highway, and that a portion of the work has been done; that the highway has not been paved with concrete or brick as petitioned for by the property owners in the benefit district; that the improvement of the highway was petitioned for and declared of public utility under the benefit-district law prior to April 1, 1929; that the highway in controversy is part of the state highway system in Johnson county and was prior to April 1, 1929, and since that date has been a part of the state highway system of the state.

In addition to the foregoing, the answer sets forth the defense of the state highway commission as follows:

"7. This defendant denies that since April 1, 1929, it has been its duty to proceed to construct said highway according to said benefit-district law and said benefit-district petition, and specifically alleges that it is not the duty of said defendant to proceed to construct said highway until certain steps have been taken by the board of county commissioners of Johnson county, Kansas, as hereinafter more specifically stated.

"8. The board of county commissioners of Johnson county, Kansas, have never, by any proper proceeding of said board, determined the type of surface to be used in the construction of said highway, as required to do by the so-called benefit-district law, and this defendant is not legally bound to proceed with the construction of said highways until said board of county commissioners have determined whether said highway be paved with concrete or with brick.

"9. The board of county commissioners of Johnson county, Kansas, have never issued and sold bonds under the provisions of Revised Statutes 68-701 to 68-709, inclusive, and amendments thereto, in an amount necessary to pay the part of the cost of the construction of such benefit-district road required by said statutes to be paid by the county, township and benefit district.

"10. A difference of opinion exists between the defendant, the board of county commissioners of Johnson county, and this answering defendant as to the duty of this defendant to pay that portion of the cost of construction of said highway chargeable to the lands and improvements in said benefit dis-

trict, it being contended by the defendant, the board of county commissioners, that it is not its duty to issue bonds to pay such portion of the cost, and that it is the duty of this defendant to pay such portion of the cost from the highway fund or some portion thereof, while it is contended by this defendant that it is the duty of the board of county commissioners of Johnson county, Kansas, to issue bonds sufficient to pay, in addition to other charges, the portion of the cost chargeable to the lands and improvements in the benefit district, and this defendant alleges that said defendant, the board of county commissioners of Johnson county, Kansas, have not issued and sold bonds in such amount.

"11. This defendant further alleges that the portion of the cost of said road chargeable to the lands and improvements in such benefit districts, if payable by the state highway commission, is payable from Johnson county's portion of the $700,000 quarterly apportionment provided by subparagraph 3 of section 17, chapter 225, Laws of 1929, and can be paid only when in such county's portion of such quarterly apportionment there are funds sufficient to pay such part of the cost of said highways, and this defendant has no power or authority, and it is not its duty, to construct said highway unless such county's portion of the $700,000 apportionment is sufficient to pay that portion of the cost of said highway chargeable to the lands in the benefit district.

"12. This defendant further alleges that the funds apportioned to Johnson county under the provisions of subparagraph 3 of section 17 have been expended according to law in payment and reimbursement of benefit-district assessments and in the payment of outstanding warrants as provided by subparagraph 3 of section 17, and that there is no money in Johnson county's portion of said $700,000 quarterly apportionment available for paying the portion of the cost of said highway chargeable to the lands in said benefit district, and said defendant, the highway commission, therefore, under the law has no right and it is not its duty to enter into contracts for the construction of said highway.

"13. Further answering, this defendant alleges that under the so-called benefit-district law as it existed prior to March 21, 1927, the portion of the cost of benefit-district roads chargeable to the lands and improvements in such benefit districts was 25 per cent of the cost after deducting federal aid, state aid and donations, and that after said date said portion was 15 per cent; that chapter 252, Session Laws of 1927, provides that upon the completion of any improvement under the provisions of the benefit-district law the cost of said improvement shall be apportioned, and that after deducting federal aid, state aid or donations, 15 per cent of said cost shall be apportioned to the several tracts of land within the benefit district. This defendant alleges that a difference of opinion exists between the parties to this action as to what portion of the cost of said highway shall be apportioned to the lands in the benefit district, it being contended by the defendant, the board of county commissioners of Johnson county, Kansas, that 25 per cent shall be apportioned to said benefit-district lands, while it is contended by the defendant, the state highway commission, that only 15 per cent of said cost should be apportioned to the lands in the benefit district, and it is suggested that a determi-

nation of this question is necessary before the state highway commission improves said highway."

Following the filing of these answers, the plaintiff filed a motion for judgment on the pleadings and the case is so submitted.

Several counties in the state, other than Johnson county, have similar problems and are interested in having a determination of the various questions which are presented in this case. Attorneys representing some of them have appeared as *amici curiæ* and filed briefs herein. We shall endeavor by this decision to definitely and finally set at rest the various contentions which seem to be blocking progress in the building of this highway.

The questions submitted on the hearing of this case and the answers thereto are as follows:

Question 1: (*a*) Shall the state board of highway commissioners or the board of county commissioners decide whether the surface is to be of concrete or brick? (*b*) At what time shall this determination be made?

Answer: (*a*) The state highway commission. (*b*) Forthwith without further delay.

Without enumerating the various arguments and contentions presented on the hearing relative to the above question we simply point out in support of our conclusion that inasmuch as the construction of all state highways automatically passed to the state highway commission on April 1, 1929, under the provisions of chapter 225 of the Laws of 1929, and since at that time the board of county commissioners of Johnson county had not designated the kind of material, that determination devolved upon the state highway commission. In *State, ex rel., v. Leavenworth County Comm'rs*, 128 Kan. 453, 279 Pac. 10, it was said:

"It is true that all of the powers pertaining to the construction, reconstruction, operation and maintenance of state highways have been vested in the state highway commission, and also the power of expending funds raised under the act or otherwise provided by law has been vested in that commission." (p. 457.)

Certain provisions of the law itself are pertinent to a determination of this question. Section 3 of chapter 225 of the Laws of 1929, after specifying certain duties of the state highway commission relative to establishing a state highway system, and after specifying that the highways formerly designated as state highways shall be a part of the state highway system, further provides that "the

state highway system thus designated shall be constructed, improved, reconstructed and maintained by the state highway commission from funds hereinafter and otherwise by law provided."

Section 8 of the above act reads:

"The state highway commission is authorized to perform all work, or to enter into, perform and require the performance of all contracts incident to the construction, improvement, reconstruction and maintenance of the state highway system and operation of the state highway department and shall take such steps as will give the provisions of this act full force and effect and do and perform all other duties required by law. . . ."

Section 10 of the act reads:

"Before advertising for bids for any contract as provided in the preceding section said state highway commission shall provide plans and specifications of the proposed work or improvement, which plans and specifications shall be displayed for the inspection of bidders at the office of the state highway commission and in the office of the county clerk in the county or counties where work is to be done at least fifteen days before the time for receiving bids."

It is clear, therefore, that on and after April 1, 1929, when the present state highway act took effect, the construction of the state highways passed from the county commissioners to the state highway commission. It is likewise clear that where steps had been taken to pave a highway under the benefit-district plan, as established in the former highway laws, the legislature intended that the state highway commission should take charge of such pending projects and complete them. (See Laws 1929, ch. 225, § 19.)

On April 1, 1929, when the present law took effect, the commissioners of Johnson county had not taken any action whatsoever toward designating which of the two materials petitioned for should be used in the paving of the highway. The selection of a material, where the petitioners have specified two materials from which a choice is to be made, is a necessary step which must be taken before anything further can be done toward paving the highway. It is manifest that the road cannot be constructed by the state highway commission nor plans and specifications prepared under the supervision of the highway commission until the kind of material is determined. The first step, therefore, which must be taken by the state highway commission is to decide whether the highway in controversy shall be paved with concrete or brick. Since this duty has rested with the state highway commission since April 1, 1929, and this step has not been taken up to the present time, it is the con-

clusion of this court that the material to be used in the construction of the highway in question must be selected by the state highway commission forthwith without further delay.

Question 2: (*a*) Shall the board of county commissioners of Johnson county be required to issue and sell bonds before the road is constructed by the state highway commission? (*b*) If so, in what amount?

Answer: (*a*) Yes. (*b*) To the full amount of the contract price.

We will amplify our answer to subdivision (*a*) of the foregoing by again calling attention to section 10 of chapter 225 of the Laws of 1929. That section makes it the duty of the state highway commission to prepare plans and specifications for the work, which shall be available to the prospective bidders fifteen days before the time for receiving bids. The state highway commission must proceed with due diligence to have these plans and specifications prepared, advertise for bids and let the contract as provided by the highway law. As soon as the contract price is thus determined the commission must at once notify the board of county commissioners of Johnson county of the letting and the amount of the contract price and make a demand on the county commissioners to proceed to issue and sell the bonds to the full amount of such contract price. It is necessary that the money be available to pay the contractor. Hence the bonds must be issued before the road is actually constructed. (See *State, ex rel., v. Leavenworth County Comm'rs,* supra.)

Question 3: How shall the costs be apportioned as between the county, township and benefit district?

Answer: To the county, 60 per cent; to the township, 25 per cent; to the state highway commission for the portion formerly chargeable to the benefit district, 15 per cent.

The above apportionment applies to the cost of construction remaining after the federal aid and all funds from all other sources have been applied in payment of the cost.

In the discussion of this question the contention is made in behalf of the county that since the petition asking improvement of this highway was filed and granted June 11, 1926, and the law then in force (R. S. 68-706) provided that 25 per cent of the cost of the improvement should be borne by the benefit district, the highway commission is liable for 25 per cent of the cost, inasmuch as the present law provides that where no assessment has been made

against the benefit district the portion chargeable to the benefit district shall be paid by the highway commission. (Laws 1929, ch. 225, § 18.) R. S. 68-706 was amended by chapter 252 of the Laws of 1927, in which latter act the amount chargeable to the benefit district was reduced to 15 per cent.

Section 1 of chapter 252 of the Laws of 1927 provides:

"Upon the *completion* of any improvement under the provision of this act the county commissioners shall meet at their office and apportion the cost thereof as follows: . . . and 15 per cent among the several tracts of land within the benefit district designated in the map, according to the benefits accruing to the real property and improvements thereon within the limits shown by said map."

The original act was amended, as above indicated, and contained a like provision requiring the county commissioners to make the apportionment upon the completion of the improvement. It appears clear, therefore, that under the original law, and the amendment thereto, the apportionment of the cost could not be made until *completion* of the improvement. Now, since the commissioners did not complete this highway before the amendment was made to the law reducing the amount chargeable to the benefit district, as now specified in chapter 252 of the Laws of 1927, it follows logically that whenever it is completed, and not until then, the remainder of the cost is to be apportioned. Not until such time can the apportionment be made. It follows likewise that when this improvement is completed the amount now chargeable under the present law to the state highway commission is the portion formerly chargeable to the benefit district by the last enactment of the legislature on that subject, viz., chapter 252 of the Laws of 1927. The amount to be apportioned to the highway commission is therefore 15 per cent—the amount which would have been chargeable to the benefit district if the improvement had been completed and the apportionment made after the enactment of chapter 252 of the Laws of 1927, and before April 1, 1929, the date upon which the control and supervision of state highways passed to the state highway commission.

Question 4: Is the county required to issue bonds covering the portion of the costs chargeable to the benefit district?

Answer: Yes. (See *State, ex rel., v. Leavenworth County Comm'rs,* supra.)

Our attention is called to a decision in *State, ex rel., v. State*

*Highway Comm.,* 130 Kan. 456, 286 Pac. 244. Also to section 18 of chapter 225 of the Laws of 1929, which reads in part as follows:

"That when no tax or assessment has been levied against the lands and improvements in said benefit districts, the state highway commission shall pay the portion of the cost chargeable to the lands and improvements in such benefit districts."

It is now argued that since the state highway commission shall pay the portion formerly chargeable to the benefit district, the county should not be compelled to issue bonds for that portion of the cost, but it should be paid directly by the highway commission whenever it becomes due. This does. not necessarily follow. The former state highway laws and the present act must be construed together. It was clearly the intention of the legislature to turn the incompleted benefit-district highway over to the state highway commission when the present law took effect so that such projects might be expeditiously completed. As previously determined in *State, ex rel., v. Leavenworth County Comm'rs,* the county commissioners were not relieved from the duty of issuing bonds as originally imposed upon them under the former law. The legislature evidently intended that the state highway commission should not be hampered by any lack of funds, and hence did not relieve the county commissioners of the duty of issuing bonds. While the payment of the benefit-district portion now falls to the highway commission, it may not have funds available to make a lump-sum payment of that portion as it becomes due during the progress of the work. Therefore the county commissioners must issue the bonds for the full amount and have funds available for prompt payment as the work progresses and is completed. The highway laws contemplate that these bonds shall be issued running over a period of years and thus distribute the costs so that only a portion of the bonds shall fall due each year. As these bonds mature from year to year it will be the duty of the state highway commission to pay 15 per cent of the amount of the bonds as the same mature. Because of the provision in section 18 of chapter 225 of the Laws of 1929, reading, "provided no interest shall be paid under this section, . . ." it is clear that the highway commission is not obligated to pay any interest, and therefore the interest on that portion of the bonds for which the commission is obligated must be borne by the county.

Question 5: If the state highway commission is required to pay

the portion originally chargeable to the benefit district, is payment to be made only from Johnson county's portion of the $700,000 quarterly apportionment provided by subdivision 3, section 17, chapter 225, Laws of 1929?

Answer: No. Payment must be made from the general funds of the state highway commission.

Subdivision 3, section 17, chapter 225, Laws of 1929, provides in part that—

"There shall be apportioned the sum of $700,000 quarterly to the 105 counties as follows: 40 per cent shall be apportioned equally to the 105 counties of the state and 60 per cent shall be apportioned among the 105 counties of the state in proportion to the assessed valuation based on the preceding year's assessment, this fund to be used by the state highway commission in the county to which it is apportioned as follows: First, where roads on the state highway system have been built under the benefit-district plan to payment and reimbursement of the benefit-district assessments as provided in section 18 of this act. . . ."

The defendant, the state highway commission, contends in this case that any liability which it has to pay, the portion formerly chargeable to the benefit district is a liability against the $700,000 fund above specified and that it can only be compelled to make payment of the portion now chargeable to the state highway commission, formerly paid by the benefit district, out of the portion of the $700,000 fund allotted to Johnson county which is to be applied to the reimbursement of amounts assessed against the benefit district as provided in the foregoing section.

This court concludes that so far as the $700,000 fund above specified is concerned it can only be drawn upon so far as it applies to benefit-district highways for the purpose of reimbursing assessments which have actually been made prior to the passage of the act. In section 18 of chapter 225 of the Laws of 1929 is found the following provision:

"*Provided further,* That when no tax or assessment has been levied against the lands and improvements in said benefit districts, the state highway commission shall pay the portion of the cost chargeable to the lands and improvements in such benefit districts, in which event no special assessments shall be levied against the lands in said benefit district or districts."

From this provision of the statute we conclude it was the intention of the legislature that as to any benefit-district projects which were inherited by the highway commission from counties upon which assessments had not been made against the lands and

improvements in the benefit district, the portion theretofore chargeable to the benefit district should be paid by the state highway commission out of its general funds.

Question 6: Since the state highway commission has already contracted for 100 miles of paved highway to be constructed during the current year, should a writ of mandamus issue against it herein in view of the limitation specified in subdivision 5, section 17, chapter 225, Laws of 1929?

Answer: Yes.

The above question was not raised in the pleading, but the contention was made in the oral argument in behalf of the state highway commission that a writ should not issue against it at this time because of the limitation above referred to. The question was then submitted to the court by common consent of all parties, and in order to avoid any further delay that might result from bringing another suit we will dispose of the contention now.

Subdivision 5, section 17, chapter 225, Laws of 1929, reads in part as follows:

"*Provided,* That the state highway commission shall not construct more than one hundred miles of high-type pavement in any one year until all the roads of the state highway system have been improved with an all-weather surface such as sand, gravel or chat."

At the time chapter 225 of the Laws of 1929 was enacted by the legislature a state highway system had already been started. Certain roads and portions of roads had been designated as state highways under former laws. In some communities the people had been alert and enterprising and had succeeded in having a highway, or part thereof, in their county designated as a state highway. These people were willing to go to the trouble of circulating and signing petitions and to assume the burden of a tax imposed against the benefit district assessed directly against their property in the benefit district in order that they might have a paved state highway near their land and thus "get out of the mud." Such was the situation in the case at bar. These citizens of Johnson county living in the benefit district took all the steps required of them to obtain a paved highway on and prior to June 11, 1926. At the time it passed the act now under discussion the legislature clearly had in mind these benefit-district highways. Instead of in any manner penalizing or hampering these citizens who had shown such a progressive spirit the legislature manifested an evident desire to reward

them for their diligence. This is shown by the provision in section 3 of chapter 225 of the Laws of 1929, which reads:

"*Provided,* That the highways heretofore designated as state highways shall be a part of the state highway system and no substantial change therein shall be made except when the public safety shall require such substantial change."

The same purpose of the legislature to conserve and protect the interests of these people is further shown by the provisions of sections 17 and 18 relative to reimbursement of taxes imposed upon benefit districts and also providing that when no tax had been assessed at the time the act took effect, that in all such pending projects the portion theretofore chargeable to the benefit district should be paid by the highway commission. From the preference thus clearly shown by the act we conclude it was the intention of the legislature that all pending benefit-district projects should be immediately taken over and that they should be given preference by the state highway commission and completed as soon as possible. Inasmuch as more than 100 miles of such benefit-district projects were taken over on April 1, 1929, in an incomplete state (as shown by the records submitted to this court in the numerous actions brought concerning the benefit-district highways), and the legislature acted with full knowledge of this situation, we conclude that the provision of subdivision 5, section 17, chapter 225, Laws of 1929, was not intended by the legislature as a limitation applying to such pending benefit-district projects, but rather that it was meant and intended as a limitation to apply only to such highways as are designated a part of the state highway system by the state highway commission itself after the act became effective.

It is not a valid defense to the application for the writ here presented to the court for the state highway commission to assert that it has already contracted for paved highways to the extent permitted by the limitation of subdivision 5, *supra,* and that therefore it is powerless to proceed with the improvement of the highway in controversy in this case. It cannot avoid the performance of one duty by showing that it has diligently performed other duties. As we interpret the duties of the state highway commission, it had a first and paramount duty to proceed with the construction of the benefit-district highways before attempting to pave other highways which it designated subsequent to the time the law became effective. If by its method of conducting the work the highway commission does not now have sufficient funds to proceed promptly

with the paving of the highway now in controversy, then it must simply postpone paving some of the highways which have been designated by it. It must perform its duties in the order in which they are imposed by the statute.

We realize that some of the points discussed and decided herein are not technically necessary to a determination of the issues submitted. However, they are within the record and it is our earnest desire to settle all controverted questions drawn to our attention in this case so that there may be an end to what is apparently becoming a multiplicity of lawsuits. It is our desire to put an end to the all-absorbing but bootless game of "passing the buck" which has been going on between the defendants ever since the present highway law was enacted. We hope by this decision to make clear to the defendants that this highway must be expeditiously completed without further bickerings and unnecessary delays.

The judgment of the court is that a peremptory writ shall now issue commanding the state highway commission to proceed to designate the kind of material with which the highway described in plaintiff's petition shall be paved, such designation to be made within fifteen days from the issuance of this writ. The writ will further command said highway commission to cause the plans and specifications for such work to be prepared and completed at its own cost and expense within sixty days from the date of the issuance of the writ. The writ shall further command the defendants to proceed expeditiously and with due diligence in all other matters and things necessary to be done in the completion of said highway and in accordance with the opinion herein rendered. Jurisdiction will be retained for the purpose of making this judgment effective in case further orders become necessary.