## No. 29,435.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, as Attorney-general, etc., *Plaintiff*, v. THE STATE HIGHWAY COMMISSION, *Defendant*.

(286 Pac. 244.)

Opinion filed April 5, 1930.

*William A. Smith*, attorney-general, and *Walter T. Griffin*, assistant attorney-general, for the plaintiff.

*Roland Boynton*, of Topeka, for the defendant.

*Jessie A. Hall*, of Leavenworth, and *Marc G. Boss*, of Columbus, as *amici curiæ*.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original action in mandamus brought by the state of Kansas on relation of the attorney-general against the state highway commission for a declaratory judgment and an interpretation of a part of section 18 of chapter 225 of the Laws of 1929 concerning the payment by the highway commission of the costs chargeable to the lands and improvements in a benefit district for the construction of a road accepted as a state highway, and to command and require the state highway commission to pay such costs in one payment. An alternative writ was issued, and the defendant has filed a motion to quash the writ.

The first point raised by the defendant on its motion is that this controverted provision does not apply to benefit districts in which the road was completed prior to April 1, 1929, when the new act became effective, that a tax and assessment must be levied at any rate for interest chargeable to the lands and improvements of the district which would nullify the effect of the provision, and that its

provisions are so in conflict with the whole scheme of the benefit-district law that it of necessity must be ineffectual.

The provision in question is, in part, as follows:

"*Provided further,* That when no tax or assessment has been levied against the lands and improvements in said benefit districts the state highway commission shall pay the portion of the cost chargeable to the lands and improvements in such benefit districts, in which event no special assessments shall be levied against the lands in said benefit district or districts." (Laws 1929, ch. 225, § 18.)

This provision is not new in road matters in this state. Substantially the same language, except the reference to the highway commission, was used in section 1 of chapter 213 of the Laws of 1925, and section 9 of chapter 255 of the Laws of 1927, in both of which the county commissioners were the paying parties and were to pay the same out of the state-aid road funds of the county, which is the same fund now being used under the act of 1929, only under a different supervision.

Defendant urges that under section 1 of chapter 252 of the Laws of 1927 the county commissioners were required to levy the assessment on the benefit district when the road was completed, and therefore if any road was completed prior to April 1, 1929, an assessment must be levied at once. This section provides for different times and amounts of assessments as the work advances and for a deficiency assessment when completed, but this act must be read in connection with the law of 1925 reënacted in 1927, as referred to above, where the county commissioners might pay the whole or any portion of such construction cost out of the state-aid road fund and, of course, if they did no assessment shall be levied, as all three of these statutes specifically state. (Laws 1925, ch. 213, § 1; Laws 1927, ch. 255, § 9; Laws 1929, ch. 225, § 18.)

It is significant to observe in section 17 of chapter 225 of the Laws of 1929 that in turning everything over to the highway commission and relieving the county commissioners of the several duties formerly imposed upon them, the matter of levying an assessment upon the lands and improvements of the benefit district was not noted as an exception, while the issuing and selling of bonds was made an express exception from which duty they are not yet relieved, and it was quite largely upon this particular feature of the new law that the decision was based in the recent case of *State, ex rel., v. Leavenworth County Comm'rs,* 128 Kan. 453, 279 Pac. 10.

By another recent decision of this court, viz., *State, ex rel., v. State Highway Commission,* 129 Kan. 192, 281 Pac. 855, interpreting a part of this same section 18, the state highway commission was relieved of the duty and burden of paying interest on reimbursements made by it in the benefit-district plan, but neither that decision nor any other that has been cited justifies the conclusion urged by the defendant that since the highway commission is not required to pay the interest an assessment will be necessary. There may be other and possibly many different ways of caring for the accruing interest.

We are not convinced by the forcible argument of counsel for defendant that the particular part of section 18, here under consideration, cannot be read in connection with other parts of the same act and with other acts on the same subject without being completely nullified and rendered ineffectual. It is the same method of payment that had been in operation four years before this enactment, only the county commissioners made the payments then instead of the state highway commission. The very apparent purpose of the new law was to substitute the highway commission for the county commissioners, and to dispense with the county supervision and control as far as possible, and where a road that had been commenced under the benefit-district plan and was just being completed at or about the time the highway commission assumed control, it is businesslike and proper that it should be handled under the new management the same as if it had been entirely constructed under such new supervision.

"It is the duty of the court, if possible, to give effect to all portions of a statute and yet make the enactment an harmonious whole." (*Noecker v. Noecker et al.,* 66 Kan. 347, syl. ¶ 1, 71 Pac. 815.)

"Where a statute is open to two interpretations, one of which would invalidate and the other uphold it, the court, if it is reasonably possible, should give it the latter construction." (*Bailey v. Baldwin City,* 119 Kan. 605, syl. ¶ 2, 240 Pac. 852.)

Defendant contends that this portion of the statute under consideration violates section 1 of article 11 of the state constitution and section 1 of the fourteenth amendment to the constitution of the United States. It is admitted that certain classifications may be made with reference to taxation, but defendant insists that the only classification or grouping under this provision is arbitrary and cannot be in good faith.

We are cited to many definitions and interpretations of terms found in the excellent work of Cooley on Taxation, and to the recent case of *State, ex rel., v. Leavenworth County Comm'rs,* 128 Kan. 453, 279 Pac. 10, which is by defendant construed as far as this particular matter is concerned as causing an inequality to exist between taxpayers in different benefit districts where assessments have been made and in districts where assessments have not been made. Other differences in taxation are pointed out as to the amount of reimbursement landowners will receive if an assessment has been made and if assessment has not been made—80 per cent in one instance and 100 per cent in the other, and only 50 per cent in another instance, all of which argument is plausible if an equality was required for public-improvement work of this kind and if it were a tax under the contemplation of the constitutional provision. But it has been long and uniformly held in Kansas not to be so regarded. It was held in *Hines et al. v. The City of Leavenworth et al.,* 3 Kan. 186, that—

"The ordinance of March 9, 1864, providing for levying the cost of street improvements on the adjacent lots, according to area, *held* not to be in conflict with section 1 of article 11 of the state constitution, which provides that 'the legislature shall provide for a uniform and equal rate of assessment and taxation.'" (Syl.)

In *Comm'rs of Franklin Co. v. City of Ottawa,* 49 Kan. 747, 31 Pac. 788, the last case cited and *Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234, were referred to and in connection therewith it was said:

"This court has ruled that section 1, article 11, of the constitution of the state, providing for a uniform and equal rate of assessment and taxation, relates to taxes, and does not apply to such special assessments or taxes as are imposed upon abutting lot owners in cities for street improvements." (p. 754.)

The same ruling was referred to with approval in *City of Wichita v. Board of Education,* 92 Kan. 967, 142 Pac. 946. But getting down to the very road law itself as first enacted in 1917 (ch. 265) and amended in 1919 (ch. 246) with all the different rates of taxation and lack of uniformity in different benefit districts, as has since prevailed, it was held that the constitutional limitation had no application to special assessments levied on land in benefit districts.

"Of course, there will be different rates of taxation for the improvement in the several municipalities upon which levies are made for the improvement, but that does not constitute an infringement of the constitutional limitation

as to uniformity. That limitation only requires that the rate shall be uniform in the district in which the tax is levied. Under the act in question the county is the taxing district for the part imposed on the county, and likewise each township is treated as a district for the part of the burden imposed on it. In each separate district the tax will be uniform, and that is all that is required. . . . This limitation, as had been determined, has no application to special assessments levied on lands of owners in the benefit district." (*State, ex rel., v. Raub*, 106 Kan. 196, 199, 186 Pac. 989.)

A discussion of the rules as to acts being in violation of the federal requirement of equal protection of the law, is in many of the same cases where equal and uniform state taxation is required, but in the case of *Watts v. City of Winfield*, 101 Kan. 470, 168 Pac. 319, the federal requirement was considered apart from other requirements, and no point was raised as to its application to assessments for public improvement. It involved the extension of a paving tax to the middle of the blocks abutting on the street that was paved. It happened that the blocks on the west side of the street were only 300 feet wide while those on the east side were 650 feet wide. The court held:

"As the blocks affected may be of different sizes, it follows that at one place the line marking the limit of the taxed district may lie farther from the improved street than at another. But this is only such an incidental inequality as may be expected from the application of any general rule designed to give approximately just results, where there is no possible standard by which exact equality may be assured. The statute fixes 300 feet as the distance for which unplatted ground abutting on an improved street shall be required to contribute to the cost of the improvement, but adds the proviso that where a different limit is fixed for adjacent platted property by the center-of-the-block rule, that limit shall control as to the unplatted ground. The manifest purpose of the proviso was to eliminate an existing source of probable injustice and inequality, not to create a new one. . . . We do not think the inequality shown here is sufficient to condemn the statute as unconstitutional." (p. 475.)

We adhere to the holdings of this court to the effect that section 1 of article 11 of our constitution has no application to special assessments levied on lands and improvements of road benefit districts, and we also hold that the restrictions of the fourteenth amendment are not violated by the inequalities that may be occasioned by the use and application of the paragraph in question in section 18, chapter 225, Laws of 1929.

Again it is urged the provision in question is in violation of section 4 of article 11 of the state constitution in so far as it provides for reimbursement or payment of benefit-district assessments be-

cause the acts under which the taxes are raised (the motor-vehicle tax, Laws 1929, ch. 81, and the motor-vehicle-fuels tax, Laws 1929, ch. 287) limit their use to construction, improvement, reconstruction, and maintenance of roads and highways. The latest case on this question is *State, ex rel., v. Saline County Comm'rs*, 128 Kan. 437, 278 Pac. 54, cited by both parties. In that case it was held that section 1 of chapter 229 of the Laws of 1929 was in violation of this constitutional provision because by agreement with the board of county commissioners of Saline county it authorized the advancing or loaning to the state highway commission from the county general fund, the sinking fund, the bond fund and other funds for the construction of a state highway through Saline county, which would be a diversion of the funds to another and different object than that for which the taxes were raised, and the court said:

"This restriction is an insuperable barrier to the loaning of the funds named or to their application to the building of state highways. The taxes were levied in pursuance of law for specific purposes, and the funds derived from these levies must be exclusively applied to those purposes. Each of the funds is distinct from the others and it is beyond the power of the commissioners or others to divert funds raised by taxation for one purpose and apply them to another. It would be a violation of the constitution to apply the bond fund to the building of county roads or to apply the sinking fund to the building of county bridges. No more can the funds raised for each of the specific purposes mentioned be loaned to the state highway commission or applied to the building of state highways. State highways and county and township highways are not in the same class, nor are they under the same control. In the classification made by the legislature, highways are specifically placed in groups, one of state highways and all the others into county and township roads (Laws 1929, ch. 224, § 1), and state highways cannot be regarded as county roads." (p. 440.)

This plainly recognizes the grouping of roads as to kind and the use of funds from any group to be limited in their application to the purposes of that group.

In the recent case of *Schnatterly v. Eslinger*, 126 Kan. 9, 266 Pac. 657, it was held that funds raised by taxation for the erection of a courthouse and jail could properly be used to purchase a courthouse site.

Reverting again to the early highway case, *State, ex rel., v. Raub*, 106 Kan. 196, 186 Pac. 989, where by statute the excess of the general fund of the county was permitted to be used for county road purposes, the court held the act was not in violation of this constitutional provision, saying:

"The levy in question was made after this provision of the statute of 1919 was enacted. In that act the legislature has expressly provided that the surplus of the general fund thereafter to be levied may be applied to the improvement of roads. It was competent for the legislature to have declared that the improvement of roads is a current expense to be paid for out of the general fund, and having declared that such use may be made of the fund, it cannot be held that this surplus will be diverted to a purpose other than that for which it was levied." (p. 203.)

In harmony with the group plan of county roads, township roads and others, as expressed in the Saline county case, *supra,* an older decision held any surplus county funds could be used for erection of permanent county buildings.

"The provision in section 1 thereof providing for the appropriation of surplus funds belonging to the county for the purpose of erecting permanent county buildings is not in violation of section 4 of article 11 of the state constitution." (*State v. Butler County,* 77 Kan. 527, syl. ¶ 3, 94 Pac. 1004. See, also, *State, ex rel., v. Thomas County Comm'rs,* 122 Kan. 850, 253 Pac. 406; *School District v. Wallace County Comm'rs,* 127 Kan. 793, 275 Pac. 188.)

Reference is made to the title of the act of chapter 225 of the Laws of 1929, including not only the matter of construction, improvement, reconstruction and maintenance of the state highway system, but also the matter of reimbursement of the benefit districts which shows the act was intended to cover both matters, but it is criticized as containing more than one subject and therefore bad for another reason. It is all one subject, but setting out different details and features of that subject. After all, what is the real difference between constructing a road and reimbursing the benefit district for one already constructed? It is like purchasing a courthouse or schoolhouse already built, instead of building one, which of course cannot be done without legislative authority, but the legislature has authorized the reimbursement in this case, and the only point is whether it is a diversion of the motor-tag tax and the gasoline tax to use part of it for reimbursement for roads already constructed instead of using it for actual construction. Under the authorities on this subject we are satisfied it is no violation of the constitutional provision to so use it.

The question is raised upon a motion to quash the alternative writ in which the facts are fully stated, and our conclusion is that the motion should be overruled and the writ allowed.

It is so ordered.