No. 31,438

THE MOUNT HOPE CEMETERY COMPANY, *Plaintiff*, v. WALTER PLEASANT, FRED HORN and C. C. COGSWELL, as Tax Commissioners of the State of Kansas, and TOM D. WILLIAMS, as County Clerk of Shawnee County, *Defendants*.

(32 P. 2d 500.)

Opinion filed May 5, 1934.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the plaintiff.

*W. B. Crowther,* attorney for State Tax Commission, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: In this proceeding the Mount Hope Cemetery Company invokes our original jurisdiction to require the state tax commission to order stricken from the tax rolls of Shawnee county a quarter section of land lying near Topeka which was conveyed to plaintiff in trust for cemetery purposes, and the net income of which is devoted to educational, religious and charitable purposes.

The facts are not in dispute, but owing to their importance must be stated at some length: On and prior to April 4, 1907, A. B. Whiting and wife owned the northwest quarter of section 3, township 12, range 15, in Shawnee county. Some time prior thereto they had signified their desire to dedicate this land to purposes of sepulture and otherwise. Accordingly the plaintiff corporation was organized, and on April 4, 1907, the property was conveyed to it under a deed of trust, in perpetuity, the principal terms of which read:

"*First:* To hold, use and manage the said property for the purpose of establishing, conducting and maintaining a cemetery or burial place for the

human dead. The said property, as the same shall be needed from time to time, shall be platted into blocks, lots and plots for graves, walks and drives and the lots and plots shall be sold for burial purposes.

"*Second:* The Mount Hope Cemetery Company by its trustees shall make all rules, regulations and by-laws governing said cemetery and the sale and care of the lots and grounds, and they shall fix prices for the sale of lots and burial plots, providing that there shall at all times be ground for sale for burial purposes at a price not to exceed twenty-five (25) cents per square foot.

"*Third:* From the sale of all lots, graves and plots for burial purposes the money derived therefrom shall be divided and used as follows: One-sixth (⅙) thereof shall be used for the permanent improvement of the cemetery; and one-sixth (⅙) shall be used for perpetual care of the cemetery. The remaining two-thirds (⅔) shall be further disposed of as follows: Three-fourths of said two-thirds (⅔) shall be turned over to and become the funds of Washburn College, at Topeka, Kansas, to be used by said college as the trustees thereof shall deem best; one-sixth (⅙) of said two-thirds (⅔) shall be paid to the Young Women's Christian Association, of Topeka, Kansas, and one-twelfth (1/12) of said two-thirds shall be paid to the Young Men's Christian Association, of Topeka, Kansas, the said funds to be used by the said Christian associations as the board of directors of each thereof shall determine."

Plaintiff went into possession, and in the quarter of a century which has followed the Mount Hope Cemetery has grown into one of the principal cemeteries of Topeka and vicinity. The agreed statement of facts, in part, recites:

"The company has issued no stock and therefore no profits or dividends of any kind were owing or paid to anyone except to the beneficiaries above named."

"The entire quarter section of ground has been platted for cemetery purposes, a plat thereof filed with the register of deeds of Shawnee county, Kansas, showing the roadways and drives throughout said tract. However, only approximately ninety acres thereof have been platted into burial lots, the balance of approximately seventy acres being held for such purposes and has not been platted into burial lots at this time, such platting being left for a future date when the growth and needs of the cemetery require additional burial lots. The seventy acres reserved for cemetery purposes is farm land. A part of such platted lots has already been sold and is used or held for such purposes and a part of which remain unsold. The title to such unsold lots remains in plaintiff. The proceeds derived from the sale of lots after paying expenses are being exclusively used by said beneficiaries for educational, benevolent, charitable and religious purposes and in the furtherance of the purposes of said organizations. After the execution of the trust agreement, this plaintiff took possession and ever since has had possession of the property described in said petition, has platted a portion thereof into burial lots, driveways, walks, and ornamental parkings, and has dedicated the same for permanent cemetery or graveyard purposes, · said driveways and

walks being used and necessary for ingress and egress to and from said lots so platted. Plaintiff has graded, landscaped and beautified said tract of land; and the lots sold to lot owners are interspersed among the unsold lots in such a manner that none of the unsold lots can be used for any purpose except cemetery purposes."

Except the dividends to the beneficiaries, as shown below, the entire income of the cemetery is regularly devoted to its operation, maintenance and improvement. Its revenues for the year 1933 were $24,555.30. Its expenses were $17,332.22; $5,223.08 has been retained in its cash and revenues for perpetual care; and $2,000 has been disbursed as annual dividends in accordance with the terms of the deed of trust, viz.:

| | |
|---|---|
| To Washburn College | $1,500.00 |
| To Young Women's Christian Association, of Topeka | 333.34 |
| To Young Men's Christian Association, of Topeka | 166.66 |

In the ninety acres which presently constitutes the actual acreage devoted to purposes of interment, the exact figures of burial lots sold and unsold, as of April 1, 1934, which have been supplied by plaintiff at our request since the cause was argued, are as follows:

| | |
|---|---|
| Platted lots | 4,187 |
| Lots sold to individuals | 1,863 |
| Lots occupied by graves | 1,530 |
| Balance of lots unsold | 2,324 |

For the time being and until required by the needs of the community, about seventy acres of the quarter section remain unplatted into burial lots. It is mowed and cared for in harmony with the portion already so platted and used, and the plaintiff does derive some income from the sale of hay taken therefrom. In 1933 the proceeds of such sales were $81.75, and this sum is included in the total income stated above.

In 1932 the entire tract of 160 acres was placed on the tax rolls of Shawnee county. Plaintiff made application to the state tax commission for exemption from taxation and for an order directing the county clerk to strike it from the tax roll. The tax commission held a formal hearing on the general subject of taxation of cemeteries, and concluded that cemeteries like plaintiff's, where the title was held by a corporation, were not entitled to exemption, but that cemeteries where the title was held by an individual, as in the case of the neighboring cemetery of Mount Calvary, where the title was held by "the bishop of the diocese" and "dedicated by a religious ceremony as church property," were exempt from taxation.

From such denial of relief plaintiff invokes judicial redress in this proceeding. The state tax commission justifies its refusal to order plaintiff's property stricken from the tax roll in view of the statute of 1931 (R. S. 1933 Supp. 17-1314), which reads:

"All lands held and owned by cemetery corporations or associations shall be subject to assessment and taxation: *Provided,* That where lands are held or owned by municipal corporations for cemetery purposes, such lands shall be exempt from taxation: *And provided further,* Where such lands are divided or platted in burial lots and the same have been sold to a person for burial purposes, such lot or lots shall be exempt from assessment and taxation, and also shall not be subject to attachment or execution."

As the ruling of the commission clearly develops the legal question of present concern, we quote therefrom:

"This commission finds that this property is not used exclusively for religious, benevolent or charitable purposes, although it is claimed that as a matter of fact up to this time, these cemetery associations have reaped no real profit from them. It is the theory of our constitution and our statutory laws that all property in Kansas (except that specifically exempted by the constitution), shall be assessed and taxed at its true value in money. This commission is not willing to find that the interest which private purchasers of lots for burial purposes have in these cemeteries, is such an interest in the land whose ownership remains in the cemetery companies, as will cause such lands to be exempted. This private ownership of these lots seems to have no bearing on the question of the assessment and taxation of the ground not so sold and still owned by these cemeteries.

"This commission concludes that this property is subject to assessment and taxation, and that it should not be stricken from the tax rolls of Shawnee county, Kansas, and that the assessment made by the assessing officers of said county is approved and sustained, and it is so ordered.

"The Mount Calvary Cemetery is owned by the Catholic church. The title to this property is in the bishop of the diocese in which this property is located. It constitutes a portion of the church. It is dedicated by a religious ceremony, as church property. No one who does not die in the Catholic faith may be buried in this cemetery. It is as much a part of the church as the church buildings itself, and is used by the Catholics exclusively for religious purposes, according to the doctrines of their faith. Therefore, this commission is of the opinion that the cemetery is used exclusively for religious purposes, and that the same is not subject to assessment and taxation, and that it should be stricken from the tax rolls of Shawnee county, Kansas, and it is so ordered."

It might be unfair to the commission to construe its ruling to mean that it is by virtue of a religious ceremony that a cemetery property becomes devoted to religious purposes so as to render it exempt from taxation, while the omission of such a ceremony leaves

the cemetery amenable to the burdens of taxation. Indeed, such a ruling would not add one picayune to the public treasury, since religious ceremonies could readily be arranged and speedily conducted in behalf of all other cemeteries which the statute of 1931 seeks to reach for purposes of taxation.

It is not the religious ceremony or any other ceremony which exempts property from taxation, but the nature of its use. From the foundation of the state, burial grounds have been exempted from taxation. Statutes of Kansas Territory, 1855, chapter 137, article 7, section 2, provides:

"The following subjects are exempted from taxation: . . . Eighth, cemeteries and graveyards set apart and used for that purpose only." (p. 658.)

In Compiled Laws of Kansas, 1862, chapter 23, a simple provision is enacted for the voluntary incorporation of cemetery associations, which may hold land not exceeding 320 acres, and section 5 of this statute provides:

"All the ground held by such association for burial purposes, while so held, shall be exempt from public taxation."

In the General Statutes of 1868, chapter 107, article 2, section 3, it is provided that: "All lands used exclusively as public graveyards" shall be exempt from taxation.

Similar exemptions can be found in later compilations of our general statutes, down to the revision of 1923, where, in R. S. 79-201, among other exemptions from taxation there is included, "All lands used exclusively as graveyards."

The underlying philosophy on which exemption from taxation is justified is that a public use is served thereby. (*Washburn College v. Comm'rs of Shawnee Co.*, 8 Kan. 344, 349.) Provision for the decent interment of the dead and for the seemly and dignified maintenance of property set apart for its accomplishment is a public purpose. And the status of the title to property devoted to such public purpose—whether it be vested in an individual, in a church dignitary, or in a corporation chartered for that purpose—is of no importance. In *Washburn College v. Comm'rs of Shawnee Co.*, supra, where the question was whether a quarter section of the land owned by the college was exempt from taxation, this court held that it was *use* and not *ownership* which controlled its liability to taxation. Mr. Justice Brewer said:

"If the framers of the constitution had intended to exempt all property

belonging to literary and charitable institutions from taxation, the language employed would have been very different. They would have used the simple, ordinary language for expressing such intention. The fact that they ignored 'ownership,' and made 'use' the test of exemption, shows clearly that they recognized the essential distinction between the two, and established the latter rather than the former as the basis of exemption." (p. 349.)

Again, in *Masonic Home v. Sedgwick County*, 81 Kan. 859, 106 Pac. 1082, where the county sought to tax fifteen acres of land owned by the Masonic Grand Lodge and used by that organization as a home for aged Masons and their families, with the usual chapel, hospital and school annexes incident thereto, it was held that the property was exempt from taxation because of the *uses* to which it was devoted, and the matter of *ownership* was not a test of its liability to taxation. It has been held that the legislature can extend the exemptions prescribed by the constitution, so long as "the legislative power is not used in a way to introduce a system of taxation substantially different from that contemplated by the constitution." (*State, ex rel., v. Joslin et al.*, 116 Kan. 615, 616, 617, 227 Pac. 543.) It will scarcely be denied that the act of 1931 which would make *ownership* and not *use* the determinant of liability or nonliability to taxation is a radical departure from the theory of exemptions of cemetery lands from taxation contemplated by our constitution and statutes for three quarters of a century down to 1931. If in the wisdom of the legislature the financial needs of the state and its subdivisions have at length become so pressing that property set apart as graveyards must be taxed, probably its considered determination of that policy will control, whatever practical difficulties may be encountered in enforcing its ukase. (*Dunlap v. Union Lodge*, 129 Kan. 287, 295, 282 Pac. 715.) But it will have to tax all privately owned cemeteries alike; and it will not be possible within the limits of our constitution nor that of the United States to enact a valid statute which shall tax the plaintiff's cemetery because its ownership is vested in a corporation while exempting a neighboring cemetery because the fee title thereto is vested in the bishop of the diocese. Thus in *Quaker City Cab Co. v. Penna.*, 277 U. S. 389, 72 L. Ed. 927, the supreme court had under review an act of the legislature which imposed a millage tax on the receipts of incorporated companies engaged in transporting passengers and their luggage in Pennsylvania. Individuals and partnerships engaged in the same line of business were not subjected to this tax. The court said:

"In effect section 23 divides those operating taxicabs into two classes. The gross receipts of incorporated operators are taxed while those of natural persons and partnerships carrying on the same business are not. The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed. It follows that the section fails to meet the requirement that a classification to be consistent with the equal protection clause must be based on a real and substantial difference having reasonable relation to the subject of the legislation. *Power Co. v. Saunders,* supra. No decision of this court gives support to such a classification. In no view can it be held to have more than an arbitrary basis. As construed and applied by the state court in this case, the section violates the equal protection clause of the 14th amendment. (Citations.) The tax cannot be sustained." (p. 402.)

In 2 Cooley on Taxation, 4th ed., 1373, 1374, it is said:

"An exemption . . . ought to be made on some ground of public policy, such as might justify . . . a donation of the public funds on some general rule of which all who come within it may have the benefit; or such as, at least, makes the public at large interested in encouraging or favoring the class or interest in whose behalf the exemption is made. (Citing *Hamilton v. Wilson,* 61 Kan. 511, 59 Pac. 1069, 48 L. R. A. 238.)

"It is difficult to conceive of a justifiable exemption law which should select single individuals or corporations, or single articles of property, and, taking them out of the class to which they belong, make them the subject of capricious legislative favor. Such favoritism could make no pretense to equality; it would lack the semblance of legitimate tax legislation."

Plaintiff lays stress upon the fact that the net income of plaintiff is devoted to educational, religious and charitable purposes—to Washburn College and to the Young Men's and Young Women's Christian Associations of Topeka. Possibly such uses would render the net income exempt, but that feature is not a controlling one in this case. In *St. Mary's College v. Crowl,* 10 Kan. 442, the action was to enjoin the collection of taxes on land owned by the college and used for purposes of farming and pasture. It was held that the property was subject to taxation. Mr. Justice Valentine said:

"For the purposes of this case it may also be conceded that if the property were used exclusively for teaching the Indians agriculture, and for raising food for them and the professors, and the necessary stock kept on the farm, it would still be exempt. But when it is used to raise food for stock not necessary to be kept on the farm; and to raise produce to sell, no further concessions in favor of its exemption can be made. Such use goes at least one step beyond where concessions can be made in favor of its exemption. It is solely the *use* of the property which determines whether the property is exempt or not. (*Washburn College v. Shawnee Co.,* 8 Kan. 344.) It makes no difference who owns the

property, nor who uses it. . . . If a farm be used for the purpose of raising produce to sell and get money to carry on a school, it will not be exempt. . . . The constitution does not exempt a farm used to raise produce to sell to other persons to obtain means whereby to purchase articles of food and clothing to feed and clothe the students, professors and missionaries connected with a school. And therefore, as the latter use, above mentioned, is not covered by the constitution, the plaintiff's farm cannot be held to be exempt; for all property, in order to be exempt, must be devoted exclusively to the use covered by the constitution." (pp. 449, 450.)

Applying the well-established rules of law suggested above, it must be held that the act of 1931 (R. S. 1933 Supp. 17-1314) which seeks to subject plaintiff's public cemetery to taxation on the ground of the corporate ownership of the fee title to the property violates those provisions of the state and federal constitutions which guarantee to all persons, corporate and individual, within the jurisdiction of the state the equal protection of the law, and which forbid unjust discrimination among individuals and corporations in respect to taxation of their properties.

There is, however, a minor matter involved in this proceeding which must be noted separately. At this time, only ninety acres of the lands granted by Whiting and wife to plaintiff are actually in use as a public cemetery. The remaining seventy acres are held in trust for future requirements. At present the seventy acres constitutes a meadow for the growing and harvesting of prairie hay. Under the St. Mary's College case just cited, the seventy acres is liable to taxation.

The decision of this court is that ninety acres of the quarter section is exempt from taxation and that the taxing officers of the state and county should govern their official action accordingly.

Judgment is for plaintiff.