OLSON ET AL. *v*. THE GARY OAK HILL CEMETERY ASSOCIATION.

[No. 26,922. Filed November 10, 1937.]

*J. Edwin Smith,* for appellants.

*Sheehan & Lyddick,* for appellee.

HUGHES, J.—This is an action by the appellants to foreclose a sidewalk assessment levied by the city of Gary against cemetery property owned by appellee.

Special finding of facts was filed at the request of appellants and conclusions of law thereon in favor of appellee.

The errors relied upon for reversal are as follows:

The court erred in its conclusions of law numbers one, two, and three upon the special finding of facts.

The finding of facts is quite lengthy and we will set out only such findings as we think are necessary for the purpose of this opinion, which are as follows:

"First: The court finds that the plaintiffs, Arvid Olson and Hilmer Olson, are and have been residents of the City of Gary, Lake County, Indiana, during all the times mentioned hereafter and engaged in the construction business as a partnership under the name of Olson Brothers. That the defendant, The Gary Oak Hill Cemetery Association, a voluntary association for profit, has and still does own and manage a cemetery in the City of Gary, Lake County, Indiana, commonly known as The Oak Hill Cemetery.

"Second: The court further finds that the defendant, The Gary Oak Hill Cemetery Association, recorded a plat of said cemetery in Lake County, Indiana, showing that said association was the owner of a section of land in said county described as:

'The Southeast Quarter (SE¼) of the Southwest Quarter (SW¼) of Section Twen-

ty-Eight (28), Township Thirty-six North (36N.), Range Eight (8) West of the Second Principal Meridian,'

and that said property according to said plat was subdivided into lots suitable for burial purposes and that certain parts of said land were reserved for walks and roads to be constructed through said cemetery. That said plat was recorded on the 1st day of March, 1909, which was prior to time the limits of the city of Gary included said land so described, but, subsequent and prior to the action herein complained of, the city of Gary had annexed said cemetery and surrounding land and that the same has been part of said city long prior to the action complained of.

"Third: The court further finds that said Cemetery Association has, throughout its existence, engaged in the selling of said burial plots so subdivided to the public since the organization of said company and is still engaged therein; that all of said land is reserved for this purpose and that a large number of lots affected by the improvement herein concerned had been conveyed by contract or deed before the action herein complained of was commenced.

"Sixteenth: The court further finds that said Primary Assessment Roll, as much as affects this suit and of the defendant Cemetery Corporation contained the following only:

'164 Oak Hill Cemetery—$1,949.82.'

"Nineteenth: The court further finds that the defendant corporation did not waiver the assessments against its property and its account with reference to the payment of Assessments for this Improvement is known as a non-waivered account.

"Twentieth: The court further finds that the said defendant corporation had knowledge of the improvement and the various steps taken thereunder and further finds that said defendant corporation did not ever appear before the Board of Works of the City of Gary to protest the making of said improvement or the resolutions confirming the benefits and costs of the adoption of a Primary Assessment Roll, nor ever brought suit to enjoin said proceedings or prevent the construction of said improvement.

"Twenty-first: The court further finds that said defendants were aware that the improvement was being constructed for they, at one time, tore up part of the sidewalk.

"Twenty-second: The court further finds that said improvement was constructed along the south side of the cemetery land operated by said defendant and that said defendant's land was not subject to assessment to the extent of 150 feet from the south border of the property.

"Twenty-third: The court further finds that said portion of 150 feet of said property liable to be assessed by reason of said improvement was practically entirely filled up with graves actually being used for burial purposes or being held under contract by the public for said purpose.

"Twenty-fourth: The court further finds that said defendant cemetery corporation never made any payment of any character on said assessment.

"Twenty-fifth: The court further finds that said defendant does not own any other land in the City of Gary and there is no other corporation owning a cemetery in said Gary, Indiana, that has the same or similar name of said The Gary Oak Hill Cemetery Association.

"Twenty-sixth: The court further finds that on the 20th day of September, 1929, more than four months before suit was filed, plaintiffs notified said defendant of their intention to bring suit to collect said assessment if said assessment was not paid, by mailing a letter addressed to the Oak Hill Cemetery Association, 467 Broadway, Gary, Indiana. That said letter was duly mailed and posted and never returned to the sender.

"Twenty-seventh: The court further finds that said assessment as made by the City of Gary together with the penalties and interest, now amounts to the sum of Three Thousand Sixty-five Dollars and Fifty-two Cents ($3,065.52).

"Twenty-eighth: The court further finds that inasmuch as practically all of the property in said cemetery is covered by graves or is being held for burial purposes by purchasers under contract or deed, it is against public policy to foreclose an assessment thereon."

Other findings set out the contents of deeds made by

the Cemetery Association to purchasers thereof and the proceedings of the Board of Works of the City of Gary relative to the construction of the sidewalk.

Upon the special findings the court stated three conclusions of law as follows:

"First: The court concludes that the law is with the defendant; that the proceedings had in connection with the making of the improvement were void and created no valid assessment lien against the defendant's property in favor of the plaintiffs according to the amount stated in the Assessment Roll plus penalties and interest.

"Second: The court concludes that it is contrary to the public policy of the State of Indiana to foreclose an assessment lien against cemetery property actually used or held for burial purposes and to sell said property to satisfy said lien, and the court further concludes that the broad equitable powers of the court may not be invoked to provide a remedy in this case where none exists and that a personal judgment should not be rendered against said defendant for the amount of said assessment.

"Third: The court concludes that there should be a judgment against the plaintiffs for costs and that the plaintiffs take nothing by their complaint."

The only question presented in this appeal is whether or not the conclusions of law are correct upon the special finding of facts. There was no motion for a new trial and the evidence is not in the record.

In special finding Number 2 it is shown that The Gary Oak Hill Cemetery is laid out upon the Southeast quarter (SE¼) of the Southwest quarter (SW¼) of Section Twenty-eight (28), Township Thirty-six North (36N.), Range Eight (8) West. Said land was divided into lots suitable for burial purposes and said land is now in the corporate limits of the city of Gary. In finding Number 3 it is found that since the incorporation of the cemetery, which was in 1909, a large number of lots affected by the improvement had been sold before the action complained of was commenced. In finding

Number 22 it was found that the improvement was made along the south side of the cemetery land operated by the defendant and that said land was not subject to assessment to the extent of 150 feet from the south border of the property, and in finding Number 23 it was found that said portion of 150 feet of said cemetery property liable to be assessed by reason of said improvement was practically filled with graves or held under contract for said purpose. In finding Number 28 it is found that, inasmuch as practically all the property in said cemetery is covered by graves or is being held for burial purposes by the purchasers, it is against public policy to foreclose an assessment lien thereon.

The prayer of the complaint was for the foreclosure of the assessment lien with attorney fees and that the real estate be ordered sold to satisfy the claim. The appellant admits that the one hundred and fifty feet of real estate which adjoins the sidewalk improvement and which is practically filled with graves can not be sold to satisfy the assessment lien on account of public policy. This policy was declared by this court in the case of *City of Gary* v. *Gary, etc., Cemetery Assn.* (1917), 186 Ind. 446, 116 N. E. 741. The appellants are not asking for a reversal of the case on the grounds that the court refused to grant a foreclosure of the assessment lien, but they contend that inasmuch as public policy prevents the sale of the real estate to satisfy the lien, the lower court should have rendered a personal judgment in their favor for the amount of the lien and in failing to do this the court committed error. The appellants now ask this court to reverse the judgment and order the lower court to restate its conclusions of law and enter judgment in their favor for the amount of the assessment as shown by the finding.

It is found in special finding Number 19 that the appellee did not sign waivers and thereby became person-

ally liable for the assessment as is many times done in the case of street improvements. If a personal judgment can be rendered in this case it must be done through the equity power of the court. The question is— can this be done in the instant case?

The appellants rely strongly upon the railroad cases where personal judgment has been rendered in the case of foreclosure of liens. The case of *The L. N. & C. R. R. Co.* v. *Boney* (1889), 117 Ind. 501, 20 N. E. 432, is cited and relied upon by appellants. In this case the appellee had constructed the grade and otherwise prepared about three miles of appellant's road bed. Appellee gave notice of his intention to hold a contractor's lien upon that part of the road bed which he had constructed. He instituted suit and recovered a personal judgment and obtained a decree foreclosing his lien in pursuance of which he afterwards sold that part of the road bed described in his lien and decree. Among other things, the court said (pp. 505, 509, 510) :

> "According to the established rule of the common law, which controls the current modern authority, the franchises of a corporation, mere incorporeal hereditaments, were not subjects to seizure and sale upon execution, in the absence of express statutory provisions authorizing the sale, and prescribing the methods of transfer. It follows, as a natural sequence, that lands, easements, or things essential to the existence of the corporation and the execution of its corporate duty, and without which its franchise would be of no practical use, can not be levied upon and sold on execution at law so as to detach them from the franchise and thus destroy its use. . . . The plaintiff in the present case acquired a mere statutory lien upon so much of the road-bed as he had constructed. The statute provides that the lien may be foreclosed, but it makes no provision for the sale of the franchise, or of the road as an entirety, or of anything that would in effect destroy or impair the use of the franchise. . . . As it appears in the present case that the debt remains unpaid, the lien affords the basis for the ex-

ercise by a court of chancery of its flexible juris-
diction to coerce payment of the debt. The Legis-
lature doubtless deemed it the wiser course to leave
the method of coercing payment in each case to
the court, rather than to prescribe a method which
might be suited to one case and not to another.
While the corporation is solvent, with property and
officers and agents, subject to the order and process
of the court, within the State, a court of chancery
can not be without expedients for coercing pay-
ment out of any money or property which the cor-
poration itself might have applied to that purpose."

The decree of the sale of the road was set aside but the
decree that the appellant pay the appellee the sum
named was affirmed with leave to take such steps as nec-
essary to coerce payment of the judgment. The case of
*L. N. & C. R. R. Co.* v. *State ex rel. Ward* (1893), 8 Ind.
App. 377, 35 N. E. 916, is also cited by appellant. This
was an action to foreclose a drainage lien. There was a
trial and finding for appellee and judgment for a fore-
closure of the lien. There was no order for the sale of
appellant's road, but a personal judgment was rendered
for the amount of the assessment. In this case the court
said (p. 378) :

"The ordinary mode of collecting such assess-
ments, and the mode evidently contemplated by the
legislature, has been by a sale of the property bene-
fited, when the owner refuses to pay. The legisla-
ture plainly contemplated that railroad companies
should pay their assessments. . . . The law, by rea-
son of consideration of public policy, takes away,
in cases of railroad companies, the ordinary proc-
ess of collection by sale of the property benefited."

The case of *L. N. & C. R. R. Co.* v. *Boney, supra,* is cited
and following that case and the case of *L. N. & C.* v.
*State for use of Beckman* (1889), 122 Ind. 443, 23 N.
E. 758, the court held that a personal judgment may be
rendered.

There is a clear distinction, however, between the rail-
road cases and the case at bar. In the railroad cases

there was no question that their property was subject to the lien and the assessment. The only question was as to the manner of collecting the assessment and it was held that on account of public policy the road bed could not be sold but that a personal judgment could be rendered for the amount of the assessment and satisfied out of other property belonging to the railroad. In the instant case it is admitted that the assessment must be made upon the one hundred and fifty feet from the line of the street to be improved. And in finding twenty-three it is found that said portion of 150 feet of said cemetery property liable to be assessed by reason of said improvement was practically entirely filled with graves. This finding is not questioned. And it is not disputed that the law of this state prevents the sale of land actually occupied with the dead from being sold to pay an assessment lien. In the case of the *City of Gary* v. *Gary, etc., Cemetery Assn., supra,* the court said (p. 453) :

> "But on the grounds of public policy we are not inclined to believe that the legislature ever intended that the sepulchre of the dead should be the subject of a lien to be enforced by a foreclosure and sale as other property. The law makes no provision for a personal liability in cases of local assessment, so that the only manner of enforcing the payment of such assessment is as we indicated, the sale of the graves of the dead to pay for sewers and drains for houses of the living. The barriers of public policy will interpose to prevent such results."

In the foregoing case it was shown that the association still owned a large tract of land that was not in use for burial grounds and a reasonable assessment might be enforced against this land without molesting the lots or parcels of ground actually in use for burial purpose. This situation is not true in the instant case. The only land subject to assessment is the 150 feet and it is actually occupied with graves and not subject to be sold.

In the case of *Niklaus et al.* v. *Conkling* (1888), 118 Ind. 289, 20 N. E. 797, the appellee instituted the action to enforce an assessment for street improvements. The statute under which the proceeding was brought provided in part as follows (p. 290) :

"... and in making the assessments against such owners for the improvement, the ground shall be assessed across the ground fronting or immediately abutting on such improvement, back to a distance of fifty feet from such front line, ..."

It was contended by the appellee that a later act extended the assessment to 150 feet of ground. The court, among other things, said (p. 291) :

"The authority to levy the assessment is purely statutory, and no other assessment than such as the statute prescribes can be made. . . . As it is solely by virtue of the naked statutory power that cities have a right to levy an assessment, they can not levy it upon other property, or upon more property than the statute authorizes. . . . Statutes conferring power to make such an assessment as the one before us are to be strictly construed."

In the case of *The State ex rel. Ely* v. *The Aetna Life Ins. Co.* (1889), 117 Ind. 251, 20 N. E. 144, the court was considering a drainage assessment and it was there held that the drainage act did not create a personal liability against the land owner, but the enforcement of the lien was confined to the land. In the case of *Indianapolis R. R. Co.* v. *Capitol Paving Co.* (1900), 24 Ind. App. 114, 54 N. E. 1076, the court was again considering a street improvement assessment and it was there said (p. 115) :

"A person against whom a local assessment is levied may successfully insist that the statute conferring this right be strictly construed in his favor. The city can act only by virtue of the naked statutory power conferred upon it, and can exercise this power with reference to no property other than the statute authorizes."

And in the case of *City of Gary* v. *Gary Cemetery Assn.,* *supra,* it is said (p. 453) :

> "The law makes no provision for a personal liability in cases of local assessment."

In discussing liens, the court in the case of *Farmers Loan & Trust Co.* v. *The Canada & St. L. R'y. Co. et al.* (1891), 127 Ind. 250, 251, 26 N. E. 784, said:

> "The acquisition of a lien results from a compliance with the requirements of the statute, and is not affected by the consequences which flow from its acquisition. If .the claimant does what the statute requires he obtains a lien, and in order to enforce the lien the law declares what shall be done; but over the question of enforcement the lienor has no control. If he obtains a lien in the authorized mode he has a right to have it enforced as the law directs and not otherwise."

In the case of *Leeds* v. *Defrees* (1901), 157 Ind. 392, 61 N. E. 930, in the foreclosure of an assessment lien for the improvement of a street, the court held that it was error to render a personal judgment in addition to the decree foreclosing the lien. And in 44 C. J. 877 it is stated that:

> "In the absence of statute to the contrary, the levy of an assessment to pay the cost of public improvements imposes no personal liability upon the owner of land assessed." Citing cases.

Again, in 44 C. J. 802, it is stated that:

> "The lien of a special assessment is not against the owner of the property or his right of possession, but it is against, and attaches to, the property itself."

In the case of *Killian* v. *Andrews* (1892), 130 Ind. 579, 30 N. E. 700, it is held that the owner of land which is assessed with benefits in the construction of a ditch is not personally liable for such assessment. The court said (p. 583) :

> "The assessment made for improvements is

strictly *in rem,* and gives no right of action against the land owners, assessed as individuals."

In 2 Elliott—Roads & Streets (4th Ed.), Sec. 706, p. 877, we find the following statement as to personal liability:

"The established rule that only such property as the statute makes liable can be subjected to the assessment seems, in itself, to lead undeviatingly to the conclusion that in no event can there be a personal liability unless it is so provided by statute or agreement. The authority to charge a special assessment upon property can not be deduced from the provision of a statute conferring authority to levy general taxes. It is agreed without very much diversity of opinion that, as to the authority to levy, special assessments is purely statutory, and that as there is a substantial and clearly defined distinction between the authority to levy general taxes and the authority to levy local assessments, the authority to levy the one does not confer authority to levy the other, because the authority in the one case is derived from a delegation of a general power, and in the other from a special power, dependent for its vitality upon the theory that the owner is compensated for the assessment he is compelled to pay by the betterment of his land. If this reasoning is valid it necessarily follows that the delegation of the one does not carry the other, and that the authority to assess other property than that benefited can only be conferred, if indeed it can be conferred at all, by an express legislative grant. It is, therefore, correctly held, as we think, that in the absence of a statute there is no right to seize any other property than that directly assessed, and consequently no personal liability. The contractor can not look to any other property than that assessed, unless, as is sometimes the case, there is a valid agreement creating a personal liability."

Without citing further authorities, we confidently assert that, by the great weight of authority, a personal judgment is not valid in the foreclosure of an assessment lien. It is only the property assessed that is liable to satisfy the assessment lien. In

the instant case, as the 150 feet which is subject to assessment is practically filled with graves, the land, on account of public policy as declared by this court, can not be sold to satisfy the assessment and a personal judgment against the appellee is invalid. In the absence of a statute there is no right to seize any other property than that directly assessed and therefore no right to a personal judgment. We have no statute in this state giving the right to a personal judgment.

The appellants have raised the question of an estoppel. We think the very nature of the instant case shows that there can not be an estoppel. The 150 feet, according to the finding, is practically filled with graves and the title to the land, for all practical purposes, is in the purchasers of the lots and as far as we know they and all members of their families, if they had any, lie buried in the respective lots. There can not be an estoppel under such circumstances. It is the living, under some state of facts, that are estopped from questioning the validity of certain proceedings and not the dead. The appellee was not estopped for the reason that none of its land outside of the 150 feet was subject to assessment, and it was not liable to a personal judgment, and the 150 feet was not subject to assessment and sale because it was filled with graves.

The appellants are left in an unfortunate condition. They have made the improvement and have not been paid for it. But, however violent the presumption may be, one is presumed to know the law. In the *City of Gary* v. *Gary Cemetery Assn.,* *supra,* the court was considering a question involving the same cemetery as we have in the instant case and the law was there announced that land actually occupied with graves could not be sold to pay an assessment. The appellants were presumed to know this law and they were also presumed to know that only 150 feet of

land from the improvement made by him could be assessed for that purpose. This was open to their observation and they were bound to take notice of the actual situation. They were also presumed to know that the statute regulating improvement assessments did not provide for a personal judgment, but the land alone was liable to satisfy the assessment lien. However unfortunate it may be to the appellants, the judgment must be affirmed.

Judgment affirmed.