No. 42,972

THE MOUNT HOPE CEMETERY COMPANY, a Corporation; HARLAN K. SCHLICHER; PERCE P. HARVEY, JR.; LESTER R. GIBBS; KELSEY M. PETRO; CLIF STRATTON, et al., *Appellants*, v. THE CITY OF TOPEKA, KANSAS, a Municipal Corporation; E. J. CAMP, Mayor; PRESTON HALE, LOUIS E. HOWARD, FRANK J. WARREN, WILLIAM R. MALLORY, Commissioners; and EDWIN R. JONES, City Clerk, *Appellees*.

No. 42,985

THE MOUNT HOPE CEMETERY COMPANY, a Corporation; HARLAN K. SCHLICHER; PERCE P. HARVEY, JR.; LESTER R. GIBBS; KELSEY M. PETRO; CLIF STRATTON, et al., *Appellees*, v. THE CITY OF TOPEKA, KANSAS, a Municipal Corporation; E. J. CAMP, Mayor; PRESTON HALE, LOUIS E. HOWARD, FRANK J. WARREN, WILLIAM R. MALLORY, Commissioners; and EDWIN R. JONES, City Clerk, *Appellants*.

(378 P. 2d 30)

Opinion filed January 26, 1963.

*O. B. Eidson*, of Topeka, argued the cause, and *Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., E. Gene McKinney, Frank C. Sabatini, William G. Haynes*, and *Roscoe E. Long*, all of Topeka, were with him on the briefs for the Mount Hope Cemetery Company.

*Bruce Works* and *Donald S. Simons*, both of Topeka, argued the cause, and *John W. Lewis* and *William B. McCormick*, both of Topeka, were with them on the briefs for the city of Topeka.

The opinion of the court was delivered by

Robb, J.: This consolidated case consists of two separate and distinct appeals in an injunction proceeding involving the same parties but different questions. The first was brought by the cemetery and the second by the city.

The cemetery appeal is from the order of the trial court holding the property of the cemetery lying north of Seventeenth Street in the city of Topeka was subject to a levy of special assessments to pay for the paving of Seventeenth Street, from the trial court's order overruling the cemetery's motion for new trial, and from all orders, judgments and decisions adverse to the cemetery.

The city's appeal is from the order of the trial court holding that the city failed to follow statutory provisions of G. S. 1949, 12-606, in levying special assessments against the cemetery property to a depth of 300 feet while on property on the immediate opposite side of the street the city levied assessments to a lessor depth and from the trial court's order overruling its motion for new trial.

No objection is made with regard to the pleadings and we shall, therefore, not repeat them herein.

At the outset of the trial certain stipulations were made which, in substance, were:

The cemetery was one within the meaning of G. S. 1949, 17-1302; the paving improvement, including curbing and guttering, was carried on pursuant to G. S. 1949, 12-601 through 12-608, inclusive; exhibit 1, reproduced herein,

properly shows the special assessment area involved; while the stipulations show that the entire improvement assessment on the platted property on the south side of Seventeenth Street totaled $19,947.92, the assessment on the cemetery property on the north side, which was unplatted, totaled $40,538.77; the Seventeenth Street paving was one project, namely, "1958 Paving Project No. 2," and extended from the west line of Hope Street to the east line of Fairlawn Road.

It is undisputed that the city is assessing for special improvements assessed to a depth of 300 feet on the unplotted cemetery property on the north side of the street while assessing the platted property on the south side to irregular depths, as shown by the heavy black line on exhibit 1. The pertinent part of G. S. 1949, 12-606, provides:

"That where the street or avenue to be improved runs partially through platted ground and partially through unplatted ground, the assessments for the payment of the cost of the construction of the improvement on the street or avenue running through the unplatted ground *shall be levied on the lots and pieces of ground along said street or avenue on either side thereof, to the same distance on either side of said street or avenue as the levy is made where the street or avenue to be improved runs through platted ground: Provided,* That in no case shall the benefit district extend more than half way to the street or public highway parallel with and next to the public ground to be improved." ( Our emphasis. )

At the conclusion of the trial, briefs were submitted and the trial court took the case under advisement. A detailed analysis of its findings of fact was made in a letter to the parties filed on November 3, 1961. Its formal journal entry of judgment filed on December 1, 1961, in brief, held: The cemetery was a proper party to maintain the action. The city had not proceeded illegally in failing to assess the cemetery burial lots individually and had not proceeded illegally by failing to give notice of the assessments to the owner of each individual lot. The city had failed to comply with G. S. 1949, 12-606 in assessing against the cemetery property to a depth of 300 feet while at the same time assessing against platted property to a much shorter depth except for a short distance between Sims Avenue and Prairie Road, as reflected on exhibit 1. The assessments against the cemetery property were unequal, unlawful, arbitrary, capricious, and void. The cemetery property abutting along the north edge of Seventeenth Street was subject to special assessments for paving and improvement of that street except that any portion of

the cemetery property used for sepulture purposes was not subject to sale by attachment and execution for such special assessments.

The trial court entered its judgment for injunctive relief against the city in favor of the cemetery as prayed for in the cemetery's petition and the city was permanently enjoined from taking any steps for assessing the cost of grading, paving, curbing, and guttering of Seventeenth Street, from taking any further action towards enforcing the collection of the assessments, from making any extension of such taxes, and from certifying them to the county clerk of Shawnee county.

The cemetery appeal specifies as error the fifth paragraph of the trial court's letter. The substance of the first sentence of this paragraph holding the cemetery property is subject to a levy of special assessments has already been stated but the trial court, in substance, made this distinction—that G. S. 1949, 79-201 and 17-1302, specifically declare that every cemetery lot sold and conveyed shall be held by the proprietor for the purpose of sepulture only and shall not be subject to attachment and execution. It concluded that since the legislature, as a matter of public policy, had precluded the sale of cemetery lots from attachment and execution for taxes or other types of debts or liens, and because it would be manifestly unfair to cast the entire burden of the improvement upon adjoining property owners other than the cemetery, the assessments should be made against the cemetery property and if not paid, ultimately the public will have to pay for the assessments because the cemetery lots are not subject to sale.

We shall first consider the question posed by the cemetery in its first specification of error in which it attacks the trial court's judgment holding and deciding that the cemetery property is subject to a levy of special assessments. In *Illinois Central Railroad v. Decatur*, 147 U. S. 190, 37 L. ed 132, 13 S. Ct. 293, where the railroad property by a land grant from Congress was exempted from all taxation under state laws until such property was sold or conveyed, or for a term of six years from the passage of the act, a special assessment was made against two parcels of the railroad property to defray the cost of grading and paving a certain street in Decatur. The railroad objected to the assessment on the ground that by its charter it was exempt from all taxation of every kind except as was provided for in the charter. This objection was overruled by the trial court and judgment entered adverse to the rail-

road which judgment was subsequently affirmed by the Supreme Court of Illinois.

On appellate review before the Supreme Court of the United States, affirming the Supreme Court of Illinois, Mr. Justice Brewer, speaking for the court in a carefully reasoned opinion, made the following distinction between taxes generally and special assessments:

"Between taxes, or general taxes as they are sometimes called by way of distinction, which are the exactions placed upon the citizen for the support of the government, paid to the State as a State, the consideration of which is protection by the State, and special taxes or special assessments, which are imposed upon property within a limited area for the payment for a local improvement supposed to enhance the value of all property within the area, there is a broad and clear line of distinction, although both of them are properly called taxes, and the proceedings for their collection are by the same officers and by substantially similar methods." (p. 197.)

We next direct attention to an earlier case involving the same cemetery which fully narrated the history thereof (*Mount Hope Cemetery Co. v. Pleasant*, 139 Kan. 417, 32 P. 2d 500) wherein it was stated that *ownership* is not the test of tax liability. This court there held:

"Chapter 148 of the Laws of 1931 (R. S. 1933 Supp. 17-1314), which would subject to taxation lands dedicated to public use as a cemetery where the ownership of the cemetery land is held by a corporation, while all other cemetery lands, the title to which is held by an individual, are exempted from taxation by other statutes, violates the provisions of the state and federal constitutions which guarantee the equal protection of the law and forbid unjust discrimination between corporations and individuals in respect to the taxation of their properties." (Syl.)

The above opinion discussed *Masonic Home v. Sedgwick County*, 81 Kan. 859, 106 Pac. 1082, wherein it was stated that ". . . the property was exempt from taxation because of the *uses* to which it was devoted, and the matter of *ownership* was not a test of its liability to taxation." (p. 422.)

At the time of the previous Mount Hope case the cemetery was using only ninety of its 160 acres as a public cemetery and it was there determined those ninety acres were exempt from taxation but the remaining seventy acres were liable to taxation.

Earlier the opinion in *Gray v. Craig*, 103 Kan. 100, 172 Pac. 1004, had extended the traditional tax exemption of graveyards to include mausoleums.

The pertinent portion of G. S. 1949, 17-1302, relating to tax exemptions of cemetery lots, states:

"All ground held by such [cemetery] corporation for burial purposes, while so held, shall be exempt from public taxation. Every lot sold and conveyed in such cemetery shall be held by the proprietor, for the purpose of sepulture only, and shall not be subject to attachment or execution. . . ."

The city admits the cemetery is not subject to taxation but contends that courts have distinguished between special assessments and taxation, which coincides with the ruling quoted herein from *Illinois Central Railroad v. Decatur*, supra, and with our own case of *State, ex rel., v. State Highway Comm.*, 130 Kan. 456, 286 Pac. 244, wherein this court at page 461 stated it was adhering to its former holdings to the effect that section 1 of article 11 of our state constitution (exempting from taxation all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes) *has no application to special assessments levied on lands and improvements*.

Numerous authorities from other jurisdictions are presented in the briefs of the parties but they frankly admit there is no opinion of this court governing the precise question here involved. We believe, however, that our statutes are clear and that the cemetery in this case is exempt from assessment for general taxation purposes but it is not exempt from assessment for special or local improvements. Other arguments of the cemetery have been noted but we do not consider them to be decisive on this point.

We now turn to the second question presented which arises out of the appeal of the city wherein the trial court held that the special assessments were unequal, unlawful, arbitrary, capricious, and void. Under the first proviso of G. S. 1949, 12-606, above quoted, to the effect that the levy shall be made to the same distance on either side of the "said street or avenue," we think the trial court's finding was correct.

Our conclusion on the above two questions is that the trial court's ruling on each of them should be affirmed for the reasons stated. Since the assessments are held to be void, it is unnecessary for this court to determine other questions raised and we do not intend anything stated herein to be determinative of those questions.

The judgment is affirmed.

PARKER, C. J., not participating.

SCHROEDER, J., dissenting: In my opinion, the appeal of the cemetery is meritorious and the judgment of the trial court should be reversed. Under these circumstances the city's appeal is moot.

The provisions of G. S. 1949, 17-1302, quoted in the court's opinion, are ambiguous. Lots sold and conveyed in a cemetery must be held by the proprietor for the purpose of sepulture only, and are not subject to attachment or execution. This simply means that should a levy for special assessments be made against the proprietors of cemetery lots, the collection *could not be enforced.* The statute in the preceding sentence exempts ground held by a cemetery corporation for burial purposes from "public taxation."

In my opinion, the two sentences read together indicate an intention on the part of the legislature to include special assessments in the term "public taxation." This is indicated by the exemption of lots held by an individual proprietor from attachment or execution. It could hardly be argued that cemetery lots held by a proprietor were subject to "public taxation" under 17-1302, *supra.*

It is not disputed that 95% of the land adjacent to Seventeenth Street in the Mount Hope Cemetery is occupied by the graves of deceased persons, and that the assessments here in question may not be enforced and the land foreclosed against without molesting these graves.

Courts have generally held that an assessment lien, since it runs against the land itself, must be enforced against the property assessed, and may not be satisfied by levying on the general assets of the association. (*Olson v. Gary Oak Hill Cemetery Ass'n.,* 212 Ind. 654, 10 N. E. 2d 995; *The People v. Cemetery Ass'n.,* 266 Ill. 32, 107 N. E. 143; *City of Gary v. Gary, etc., Cemetery Assn,* 186 Ind. 446, 116 N. E. 741; and see 71 A. L. R. 322, "Cemetery property and cemetery lots as subject to assessment for public improvement, in absence of express exemption"). This is the established rule in Kansas.

Reference is made to the case of *Mount Hope Cemetery Co. v. Pleasant,* 139 Kan. 417, 32 P. 2d 500, where the origin, character and purpose of the appellant cemetery is described in detail.

In view of the provisions of 17-1302, *supra,* language used in the case of *Cemetery Co. v. Ann Arbor,* 303 Mich. 56, 5 N. W. 2d 564, best expresses my view of this case. There the court said:

". . . the law is well established in this State that the lands of a cemetery association, used for cemetery purposes, cannot be subjected to a lien for a special assessment for street improvement and cannot be sold to satisfy such an assessment. *Woodmere Cemetery Association v. City of Detroit,* 192 Mich. 553; *White Chapel Memorial Association v. Willson,* 260 Mich. 238. In *Avery v. Forest Lawn Cemetery Co.,* 127 Mich. 125, 129, we said:

" 'It is the settled policy of this State, in common with the universal sentiment of mankind, *to preserve and maintain* the burial places of the dead. The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes. It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, all cemeteries, et cetera, while in use as repositories for the dead. This was within the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property.'

". . . The upkeep, care and maintenance of a cemetery are necessary to carry out the policy of preserving and *maintaining* the burial places of the dead. If the funds obtained and accumulated for such purposes [care and maintenance] can be taken to satisfy a special assessment for street improvement, then the State policy is not carried out. A cemetery without funds and equipment for its upkeep, care, and maintenance would soon deteriorate into an unsightly and disgraceful condition.

· · · · · · · · · · · · · ·

"Plaintiff is a nonprofit corporation. Its personal property consists principally of certain reserve funds. Its annual statements show no surplus of income from which these special assessments could be paid. Payment of the unpaid installments of the two assessments would materially reduce plaintiff's reserve funds. To take from the 'endowment fund reserve,' or from the 'perpetual care reserve,' or from the surplus fund for the 'care and upkeep' of the cemetery, the amount necessary to pay these special assessments would be inequitable and might result in irreparable injury to plaintiff's financial condition. These funds, though not exempt by statute, are certainly of such a trust nature that they should not be violated or depleted through the payment of special tax assessments which were void as liens on plaintiff's land." (pp. 61, 62, 64.)

It is respectfully submitted the lower court should be reversed.

PRICE, J., concurs in the foregoing dissenting opinion.